UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY HENDRICH, *et al.*, Plaintiffs, | ) | Case No. 4:14-cv-01635 |
| v. | ) | State Court Case No. 1422-CC01224 |
| MEDTRONIC, INC., MEDTRONIC SOFAMOR DANEK, USA, INC., and DOES 1-100, Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN SUPPORT PLAINTIFFS' REPLY TO DEFENDANTS**
**OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

## Preliminary Statement

Plaintiffs submit this Reply to Defendants' Opposition to Plaintiffs' Motion to Remand. While this case is before the Court for the first time, Defendants' gamesmanship in seeking removal certainly is not. As the Court is aware, Defendants have previously removed similar cases, specifically *Smith*[1] and *Anders*[2], from the Circuit Court of the City of St. Louis, Missouri. Those removals were unsuccessful and the Court swiftly granted remand back to the state court. Defendants have now removed those cases for yet a second time. Defendants' newest removal gambit now begs the Court to remove this case (as well as the *Smith* and *Anders* actions) upon the ludicrous claim that Plaintiffs have somehow "implicitly" requested a joint trial of all *three* individual actions *together*, in one mass trial. That chimera is supported by little else

[1] *Joyce Smith et al., v. Medtronic Inc., et al.,* Case No. 4:14-cv-01636 (E.D. Mo. 2014).
[2] *Dennis Brian Anders, et al., v. Medtronic, Inc., et al.,* Case No. 4:14-cv-01637 (E.D. Mo. 2014).

than cherry-picked quotes, taken completely out of context, from briefs written in resistance to Defendants' motions to dismiss not one single case, but three individual cases, *Hendrich, Smith and Anders*. The problem for Defendants is that at no point have Plaintiffs made any motion, oral statement, or exhibited any conduct (express or implicit) requesting that any case from each of the *Hendrich*, *Smith*, and *Anders* actions be tried jointly.

Were that not enough of a bar to removal, Defendants' removal petition is also untimely. Defendants must concede that they first ascertained that both the *Smith* and *Anders* actions were removable under CAFA at least eight (8) months ago, as can clearly be read in their first removal notice in this case. Finally, Defendants reliance on *Atwell v. Boston Scientific Corp.*, the crux of their legal argument, is entirely misplaced. The court in *Atwell* specifically distinguished its decision from *Koral v. Boeing*, a case with identical facts to the case at bar. *See Atwell*, 740 F.3d 1160 (8th Cir. 2013); *See also Koral*, 628 F.3d 945 (7th Cir. 2011).

## I. ARGUMENT

### A. Plaintiffs Have Never Expressly Or Implicitly Requested That Any Of The 93 Cases From *Hendrich* Be Tried With Any Other Case.

Defendants quote both Plaintiffs' opposition to their motion to dismiss and Plaintiffs' sur-reply, intentionally misleading this Court into believing that Plaintiffs' somehow *implicitly* discarded their individual action, replacing it with a request for a joint trial of plaintiffs in an entirely separate litigation. What they conveniently fail to mention is that each such quote was from a *separate brief* filed in each *distinct state court action*. Defendants then took each disjoined quote and put it together as if the plaintiffs stated it that way. The assembly of the various quotes from the various sources is literally a fabrication created by the Defendants in an attempt to deceive the Court into believing it was a single thought process by the plaintiffs. Plaintiffs did not submit a *single* opposition and sur-reply for *Hendrich*, *Smith*, and *Anders*, but

instead filed an individual opposition in each individual case, *viz.* three oppositions and three sur-replies, because *Hendrich*, *Smith*, and *Anders* are all individual actions. Taking *each* quote from *each* action and lumping them together as if they apply across three distinct litigations takes them out of their proper context, done precisely to allow Defendants to make the bogus "single trial" argument in an attempt to distract the Court into an improper removal. Defendants understand that if there is *any* doubt as to the propriety of removal, a case must be remanded. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 18 (1936). A defendant who needs to cherry pick quotes from a plaintiffs' 105 pages of opposition to a motion to dismiss, only to take them completely out of context, cannot hope to shoulder that heavy burden and casts substantial doubt as to the real reason for yet another attempted removal.

As one of the many examples of Defendants' contextual fabrications, when Plaintiffs argued that "severance of Plaintiffs' claims, would needlessly multiply… the number of judges and juries needed to address the same issue", the "Plaintiffs" spoken about were those in this action alone. *Hendrich* Opp. at 56-57. Plaintiffs were responding to Defendants' claims of misjoinder, where it was obvious Defendants were not discussing any case other than *Hendrich* and, as one might easily recognize, *neither were Plaintiffs.*

Nowhere in Plaintiffs' opposition or sur-reply in this *Hendrich* case can Defendants point to any language, express or implying, that Plaintiffs want to try their case together with plaintiffs in the *Smith* and *Anders* matters in some mammoth or combined single trial. Such language simply does not exist, which is why Defendants had to invent it and then work so carefully to patch together quotes from the plaintiffs in three separate cases into one "implicit" request. *See* Defs.' Br. at 6.

### B. *Atwell v. Boston Scientific Corp.*, the Linchpin to Defendants' Removal, Is Not Applicable To This Case

Defendants desperately cling to *Atwell v. Boston Scientific Corp.* to support this egregious removal attempt, but in doing so, they must ignore one simple fact, *i.e.*, that the court in *Atwell* clearly distinguished that case from *Koral v. Boeing;* a case with the exact same facts as the case at bar. *See Atwell*, 740 F.3d 1160 (8th Cir. 2013); *See also Koral*, 628 F.3d 945 (7th Cir. 2011). The key difference between the two cases is the key difference here as well. The plaintiffs in *Atwell* made explicit motions to assign their cases to a single judge for trial, while the plaintiffs in *Koral* were only *resisting a motion to dismiss*, without any independent action of their own. *Id.* The court in *Atwell* recognized this distinction itself and when reviewing the facts in *Koral*, drew a clear line in the sand:

> We disagree with the district court's conclusion that counsel's "anticipation of a bellwether trial" was simply "a prediction of what might happen if the judge decided to hold a mass trial." That was a quote from Judge Posner's opinion in *Koral*. **But plaintiffs in *Koral* were *resisting* defendant's motion to dismiss, not supporting a motion** to place multiple cases in a procedural setting where bellwether trials would be the normal way to efficiently prevent inconsistent judgments.

*Atwell* at 1165 (citing *Koral*, 628 F.3d 945) (emphasis added). The exact same situation from *Koral* is presented here, where Plaintiffs were only *resisting* Defendants' motion to dismiss and never made any motions to support the grant of a joint trial.

The similarities between this case and *Koral* are really quite remarkable. In *Koral*, defendants were sued in Illinois state court in twenty-nine (29) *separate actions* consisting of 117 plaintiffs who were injured or killed as the result of an airplane crash. *Koral*, 628 F.3d at 946. Defendants then filed a motion to dismiss in state court against all twenty-nine (29) cases based on the doctrine of *forum non conveniens* claiming that several witnesses resided in Washington and would have to travel to Illinois repeatedly to testify in twenty-nine (29) separate

trials. *See id.* In their opposition, plaintiffs argued that Illinois would not be an inconvenient forum since several exemplar cases could be tried on one occasion, eliminating the need for witnesses to repeatedly travel to Illinois. *See id.* Defendants next removed the twenty-nine (29) separate suits to federal district court, claiming that plaintiffs had just proposed a joint trial, which then made all twenty-nine (29) actions removable under CAFA. *Id.* In response to defendant's removal under CAFA, the court noted that "[defendant's] removal of these cases was premature. The proposal cannot be made by a defendant, so [defendant's] desire for a joint trial (a desire based we assume on its preference for defending these suits in federal court) cannot support removal." *Id* at 946 (internal citations omitted). The court also determined that *if* the state court ultimately decided to conduct a joint trial on its *own* initiative, after remand, even that would not provide grounds for removal under CAFA. *See id.* at 947. Logically, the court recognized that defendant's motion for dismissal based on *forum non conveniens* provoked plaintiff's response and that plaintiffs would not be able to argue against such a motion without making those statements:

> It would be odd to think that plaintiffs could not make a telling response to a motion for dismissal of a suit on the ground of *forum non conveniens* without thereby having forfeited their chosen forum; by arguing against dismissal, they would be arguing for it.

*Id.*

In the case at bar, Plaintiffs are now faced with the exact same situation. Defendants have removed this case based upon their *own desire* to try these cases in federal court, yet attempt to conceal this strategy behind some fictional notion of Plaintiffs' *implied* desire for a joint trial. At no point have Plaintiffs' requested, made a motion for, or even made a statement in open court that the three separate actions, each consisting of less than 100 cases, be tried

jointly. Plaintiffs merely opposed Defendants' lengthy motion to dismiss, which was based upon several grounds, including *forum non conveniens* as in *Koral*. *See* 628 F.3d 945. The quote from Plaintiffs' opposition[3] that Defendants cling to so strongly served only to argue that Missouri's joinder rule allows these cases to be tried in Missouri state court, an argument which only applied to the cases in the specific individually listed action. Both *Smith* and *Anders* are completely separate from *Hendrich* and Plaintiffs in no way, express or implied, asked the state court to try all three separate actions together. The slickness of Defendants' argument reveals its worth.

Defendants also claim that with respect to arguing Plaintiffs' claims were improperly joined under Missouri's permissive joinder rule (Rule 52.05), Plaintiffs "were not required to argue in their Surreplies that there is 'no authority capping the number of cases that may be permissibly joined' in accordance with the 'important' Missouri policy of 'try[ing] all issues arising from the same occurrence or series of occurrences together.'" Defs.' Br. at fn 6 (no cite to Pl. Mot.). However, that language is *in the text of Missouri's permissive joinder rule*. It is nothing more than a statement of law, not one of intent. Missouri's permissive joinder rule reads "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or **arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.**" Mo. R. Civ. P. 52.05. The bolded portion of the statute is that portion quoted in Defendants' opposition to remand. How could Plaintiffs have possibly argued that the joinder of their claims were proper without using the very text of the statute which permits permissive joinder statute? Neither Plaintiffs nor Defendants may ignore the statutory rules of any jurisdiction. Nonetheless, while they may be legislative statements, they do not qualify as

[3] (*Hendrich* Opp. at 56-57.)

the personal statements of the parties and certainly cannot be interpreted as even an implicit request for a joint trial.

### C. Defendants' Removal Is At Least Eight (8) Months Late.

Defendants' removal is untimely, for it is plain that they first ascertained, albeit incorrectly, that this case could be subject to CAFA at least *eight (8) months ago*, when they removed *Anders*[4] for the first time. *See also* Notice of Removal attached hereto as Exhibit "A". Timeliness under 28 U.S.C.A. § 1446 is determined by when the removing party first ascertained the action was removable:

> … if the case stated by the initial pleading is not removable, a notice of removal may be filed within **30 days** after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it **may first be ascertained** that the case is one which is or has become removable.

28 U.S.C.A. § 1446 (emphasis added). Defendants may have forgotten that in their Notice of Removal in *Anders*, at Paragraph 61, they specifically claimed that Plaintiffs *were gaming CAFA* by structuring their filings to avoid federal jurisdiction. *See* Exh. "A". Instead of following through on their accusation, Defendants chose to hold an ace up their sleeves, ready to insert that new theory of removal on the eve of a critical state court hearing. Now, when it saves them from their *own motion to dismiss*, they claim to have *first ascertained* that this case was removable under CAFA through some "other paper." *See* Def Br. at 2-3. Their own prior removal notice exposes this representation as disingenuous at best. There are two possible scenarios to explain this glaring defect - - Defendants either misrepresented as to when they first ascertained the case

[4] Defendants' first Notice of Removal in the *Anders* action was filed in the Eastern District of Missouri on February 3, 2014.

had become removable under CAFA, or they were so focused on conjuring implied language from Plaintiffs' briefs that they forgot that the critical express language could be found from their own.

This concept, that one could "first ascertain" *twice*, was deftly upended in *Collora v. R.J. Reynolds Tobacco Co.*, where defendants also claimed to have *first ascertained* the case was removable *for a second time*, only to have the court call their bluff and find the attempted removal untimely. 428 F.Supp.2d 1018 (E.D. Mo. 2006). In that case, plaintiffs filed their complaint on March 17, 2000. Nearly four years later, defendants attempted to remove the case for the first time based on the receipt of an "other paper", which was an order in another case, *Watson v. Philip Morris Companies Inc.*, 2003 WL 23272484 (E.D. Ark. 2003)[5], which granted removal under the federal officer removal statute. In spite of that recent decision, the court in *Collora* found that defendants had not met their burden for removal and did not find *Watson* persuasive. *Collora*, 428 F. Supp. at 1020. Only a year later, defendants attempted to remove *Collora* for yet a *second* time, under the same premise, when *Watson* was affirmed by the Eighth Circuit. *See id.* Defendants in *Collara*, like Defendants here, were essentially arguing that they had "first ascertained" once again, that the case was removable, so their petition was therefore timely. The court found this argument to be nothing less than bizarre. "**It is axiomatic that [d]efendants cannot 'first ascertain' one thing and then 'first ascertain' the exact same thing** 20 months later based on the exact same reasoning." *Id.* at 1022 (emphasis added). The court reasoned that the basis for removal was ascertainable at the time of the plaintiff's *initial* pleading in 2000 and therefore, removal was ascertainable more than thirty (30) days prior to the second removal attempt. *See id.*

---

[5] The holding in *Watson* granting removal under the "federal officer" removal statute was ultimately reversed by the Supreme Court. *See Watson v. Philip Morris Companies Inc.*, 2003 WL 23272484 (E.D. Ark. 2003) aff'd 420 F.3d 852 (8th 2005) rev'd 551 U.S. 142 (2007).

Similarly here, while Defendants may contend they "first ascertained" this case was removable under CAFA through Plaintiffs' opposition papers, the statements Defendants claim to have relied upon actually have their basis in Plaintiffs' original petition, filed months previously. For example, Defendants cite to Plaintiffs opposition papers claiming that Plaintiffs implicated CAFA when, with respect to Mo. Rev. Stat. § 507.040.1 and Mo. Sup. Ct. R. 52.05:

> Plaintiffs' counsel implicitly, if not explicitly, requested that the cases be tried in conjunction with one another, thereby implicating CAFA's 'mass action' provision as construed by the Eighth Circuit in *Atwell*. Plaintiffs in these briefs expressly invoked the policy underlying Missouri's joinder rule **—'to try all issues arising out of the same occurrence of series of occurrences together'**…

Def. Br. at 2 (citing *Hendrich* Opp. at 53) (emphasis added). Defendants also claim that:

> Plaintiffs' statements clearly invoke what they contend is an overarching policy to try cases involve [sic] common questions of law or fact jointly. They likewise clearly assert that all the actions involving [sic] the very same common questions of law and fact.

Def. Br. at 6. Curiously, Defendants did not find that identical "implicit" invocation of CAFA <u>almost a year earlier</u> when Plaintiffs' stated uniformly in the *Anders*, *Smith*, and *Hendrich* petitions that:

> The plaintiffs herein are all properly joined in this action pursuant to 507.040 R.S. Mo as they **assert a right to relief under the same series of occurrences and questions of law and fact are common to all plaintiffs** in this action.

*Hendrich* Pet. at 17 (emphasis added).

Plaintiffs can also play games with context. Using Defendants' own strategy of tearing a quote specifically from *Hendrich* out of context, and applying that quote to *Smith* and *Anders*, the implicit request for a joint trial can be found even in Plaintiffs' *original Petition*, which would place this removal well beyond the strict thirty (30) day limit pursuant to 28 U.S.C.A. § 1446. Of course, Plaintiffs never requested that *Hendrich* be combined with any other case and there is no need to resort to gamesmanship. However, Defendants cannot escape the pitfalls of their own strategy and faulty logic, hoisted, as it were, on their own petard, as to the so-called *implicit* requests for a joint trial.

### D. The State Administrative Order Contains Specific Language That Assigns Each Case to Trial Only After Pre-Trial Matters Are Completed

Words matter, regardless of whether it is a motion, petition, or in this instance, a State Administrative Order. Try as they might, Defendants cannot misinterpret the words within the State Administrative Order, which explicitly reads:

> "[w]hile Judge John Garvey will handle all pre-trial matters concerning these cases in Division 17, he will return ***each*** case to Division 1 for assignment for trial once all discovery and other pre-trial matters have been completed."

State Administrative Order attached as Exhibit "B" (emphasis added). The order does not state that *all* cases would be returned to Division 1, but specifically orders that *each* individual case will be returned to "Division 1 for assignment for trial." *Id.* (emphasis added). This is a clear indication that *each* case is to be treated separately once pre-trial matters have concluded. Defendants' assertion that this does not mean *each* case will be tried *separately*, fails to take into account the language used within the order. Plaintiffs would have objected to an order stating that after pre-trial matters are concluded *all* cases would be assigned to trial because the term

"*all*" in that instance would imply that any case combined for pre-trial matters would ultimately be tried together. The term "*each*" gives the parties clear instruction that these cases would be assigned to trial *separately* and Defendants had no objection to that order at the time it was granted.

### E. Both *Parson v. Johnson & Johson* And *Scimone v. Carnival Corp.*, Provide An Excellent Analysis of the Issues Presented Here.

Defendants would like the Court to believe that *Parson v. Johnson & Johnson* and *Scimone v. Carnival Corp.*, are inapplicable to this case, but the reasoning applied by those courts is, quite to the contrary, instructive indeed. *See* Defs.' Br. fn 7 (citing *Parson v. Johnson & Johnson*, 749 F.3d 879 (10th Cir. 2014); *Scimone v. Carnival Corp.*, 720 F.3d 876 (11th Cir. 2013)). In *Parson*, plaintiffs filed numerous lawsuits, each consisting of less than 100 claims, which the court noted was proper when stating "… we adopt the well-established principle, explained in several persuasive cases from our sister circuits, that 'state court plaintiffs with common claims against a common defendant may bring separate cases with fewer than 100 plaintiffs each to avoid federal jurisdiction under CAFA—unless their claims are 'proposed to be tried jointly.'" *Parson*, 749 F.3d at 886. Defendants in *Parson*, much like Defendants here, claimed that plaintiffs had "implicitly" proposed a joint trial under CAFA through their common choice of forum. *See id.* at 888. However, the court correctly noted that "nothing in CAFA's plain language supports the concept that such a 'proposal' may be inferred simply because the plaintiffs filed within a single jurisdiction separate complaints containing similar claims, *where they made no request that the claims be consolidated or coordinated for trial in any way.*" *Id.* at 888 (emphasis added). Once again, this case is similar to the case at bar because Plaintiffs have made no request that the *Hendrich* action be consolidated at any point, with any other case.

Defendants also believe *Scimone v. Carnival Corp.,* is inapplicable, which is no surprise due to its logical position rejecting Defendants' concept of so-called "implicit" requests, the "the crux" of their case:

> Indeed, if we accepted Carnival's position, we would reduce the meaning of the word "proposed" to nothing more than "contemplated the possibility of" or even "consciously attempted to avoid." Yet we would hardly say that a mouse "proposes" to be eaten by a cat when it makes the mistake of being seen by the cat, recognizes the danger, and then quickly scurries away. **This interpretation of the word "proposed" would affect a substantial change to the statute as Congress wrote it. The more natural reading of the provision is that the plaintiffs must actually want, or at least intend to bring about, what they are proposing.**

720 F.3d at 883-84 (emphasis added). Without the element of Plaintiffs taking any affirmative action to have *Hendrich*, *Smith*, and *Anders* tried jointly or even wanting those cases to be tried jointly, all that remains to support this attempted removal would be the singular desire of Defendants, which is patently improper.

### F. This Court Should Grant Plaintiffs' Request For The Imposition of Costs, Expenses, And Attorneys' Fees.

As shown in Defendants' first removal of *Anders*, Defendants had "first ascertained" that these cases were removable over eight (8) months ago. *See* Exh. "A" at ¶ 61. Instead, Defendants nonetheless chose to wait until *three (3) days* before a critical state court hearing on their *own motion to dismiss* before removing this case and both *Smith* and *Anders* (for a second time) to this Court. Plaintiffs request that, under these circumstances, the Court grant Plaintiffs "payment of just costs and any actual expenses, including attorney fees, incurred as a result" of Defendants' removal, in addition to admonishment for their wasteful conduct, as explicitly provided by statute. 28 U.S.C. § 1447(c).

## II. CONCLUSION

For all the foregoing reasons, and for the reasons set forth in Plaintiffs' Motion to Remand, it is respectfully requested that this Court remand this matter to the 22nd Circuit Court, St. Louis, Missouri along with any other relief this Court deems just and proper.

DATED: October 15, 2014

Respectfully submitted,

*/s/ Eric D. Holland* ___________________

Eric D. Holland - Bar #: 39935MO
R. Seth Crompton – Bar #57448MO
Holland, Groves, Schneller & Stolze, LLC
300 N. Tucker Blvd., Suite 801
St. Louis, MO 63101
Tel: 314-241-8111
Fax: 314-241-5554
Email: eholland@allfela.com
Email: scrompton@allfela.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2014, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Respectfully submitted,

*/s/ Eric D. Holland* ____________________

Eric D. Holland - Bar #: 39935
Holland, Groves, Schneller & Stolze, LLC
300 N. Tucker Blvd., Suite 801
St. Louis, MO 63101
Tel: 314-241-8111
Fax: 314-241-5554
Email: eholland@allfela.com